739 F.2d 983
 35 Fair Empl.Prac.Cas. 693,
34 Empl. Prac. Dec. P 34,566
Garland C. HOSTETTER, Appellant,
v.
UNITED STATES of America, Edsel R. Field, Col., U.S. Air
Force, Jerry W. Angell, Col., U.S. Air Force Commander,
317th Combat Support Group; Allen W. Hathcock, Lt. Col.,
USAF, 317th Combat Support Group, Hearing Examiner; Linda
C. Ross, Labor Relations Specialist & Acting Civilian
Personnel Officer, 317th Combat Support Group; and Henry H.
Robinson, Chief, Morale Welfare & Recreation Division, 317th
Support Group, Pope Air Force Base, N.C., Appellees.
 No. 83-1476.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1983.
Decided Aug. 2, 1984.
 
 Timothy A. Noe (Finch and Noe, on brief), for appellant.
 David P. Buck, Lt. Colonel, USAF, Dept. of the Air Force, Washington, D.C. (Samuel T. Currin, U.S. Atty., James S. Perry, Asst. U.S. Atty., Raleigh, N.C., on brief), for appellees.
 Before WIDENER, HALL and MURNAGHAN, Circuit Judges.
 WIDENER, Circuit Judge:
 
 
 1
 Appellant Hostetter was dismissed from his position as a civilian "bartender leader" at the Pope Air Force Base NCO Club in Fayetteville, North Carolina, on the ground that he sexually harassed and discriminated against certain of his female subordinates. After exhausting administrative remedies, he brought this action, seeking, among other things, reinstatement. The district court found that substantial evidence supported the decision to dismiss Hostetter, and granted summary judgment for the United States and the other defendants. We affirm.
 
 
 2
 Two female employees at the NCO Club made the initial complaints about Hostetter's behavior. The club manager, albeit under protest, notified Hostetter of the charges and proposed removal of Hostetter for discrimination based on sex. The chief of the Morale, Welfare and Recreation Division took oral and written statements from Hostetter pursuant to Air Force Regulation (AFR) 40-7 p 9-14(g), and found that the evidence supported removal. Hostetter was dismissed on June 13, 1981. The matter then went to a hearing examiner, who found a long pattern of sexual harassment; an offensive, hostile work environment created by sexual harassment and the use of offensive nicknames; and a decrease in the female employees' work hours during the period of the harassment. Hostetter appealed to the Base Commander, who agreed with these findings. Hostetter's further appeal to the Wing Commander was denied. Hostetter then brought this action in district court, claiming jurisdiction under the Tucker Act, 28 U.S.C. Sec. 1346; the mandamus statute, 28 U.S.C. Sec. 1361; the Administrative Procedure Act (APA), 5 U.S.C. Sec. 702; and 28 U.S.C. Sec. 1331.
 
 
 3
 We agree with the district court so far as it held that it had jurisdiction under 28 U.S.C. Sec. 1331 to review Hostetter's claims that he was discharged in violation of the Constitution and laws of the United States. Sheehan v. Army & Air Force Exchange Service, 619 F.2d 1132, 1138-40 (5th Cir.1980), rev'd on other grounds, 456 U.S. 728, 733 n. 3, 102 S.Ct. 2118, 2121 n. 3, 72 L.Ed.2d 520 (1982). The APA does not itself afford a grant of subject matter jurisdiction permitting judicial review of agency action, Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 985, 51 L.Ed.2d 192 (1977), and insofar as the opinion of the district court may imply otherwise, we must disagree. However, section 1331 confers such jurisdiction on district courts to review agency action subject only to preclusion-of-review statutes. Id. at 105, 97 S.Ct. at 984.
 
 
 4
 In situations such as that here, in which there is no preclusion-of-review statute and no special statutory review procedure provided, the APA states the policy that a person suffering legal wrong because of agency action should have judicial review thereof by way of any applicable form of legal action, including an action for injunctive relief. 5 U.S.C. Secs. 702, 703. In section 702 Congress has waived the defense of sovereign immunity in such nonstatutory review cases in which nonmonetary relief is sought, and we have so held. Food Town Stores, Inc. v. EEOC, 708 F.2d 920, 922 (4th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984). Although the district court thus properly considered Hostetter's claim for reinstatement, 5 U.S.C. Sec. 702 does not waive sovereign immunity for Hostetter's back pay claim. We need not and do not decide whether the Tucker Act, 28 U.S.C. Sec. 1346(a)(2), effected such a waiver in this case because we find that Hostetter was not entitled to reinstatement, so back pay would not be due him whether or not there was a waiver.[1]
 
 
 5
 The substantive issues of this appeal involve application of administrative law principles to the decision to fire Hostetter. Because he was a nonappropriated fund instrumentality (NAFI) employee,[2] not a competitive-service employee, Air Force regulations rather than civil service regulations provided the notice, hearing, and appeal procedures at the administrative level. They are AFR 40-7 p 11-13. See generally Perez v. Army & Air Force Exchange Service, 680 F.2d 779 (D.C.Cir.1982). Even so, we find guidance in the civil-servant dismissal cases for determining the standard of review here. We must uphold the Air Force decision unless it is not supported by substantial evidence or is arbitrary or capricious, see Halsey v. Nitze, 390 F.2d 142, 144 (4th Cir.), cert. denied, 392 U.S. 939, 88 S.Ct. 2316, 20 L.Ed.2d 1399 (1968), unless the Air Force failed to follow its regulations to the prejudice of the employee, see McCourt v. Hampton, 514 F.2d 1365, 1368, 1370 (4th Cir.1975), or unless the decision is otherwise unconstitutional, in excess of statutory limitation, or not in accordance with law. 5 U.S.C. Sec. 706(2).
 
 
 6
 Hostetter's dismissal was supported by substantial evidence. His primary objection to the sufficiency of the evidence is that the hearing examiner relied upon the employee time-card printouts rather than the work schedules in determining that the women's hours had been cut when they refused Hostetter's advances and the hours of one of them increased upon his request to drop the charges. Hostetter's chart purporting to summarize the schedules by month is on the same footing as the schedules. The hearing examiner was fully justified in relying instead on the women's testimony and the time-card printouts which show decreases and increases in work hours during the relevant time period. We think this goes to the weight of the evidence, a matter usually entrusted to the fact finder, as here. Moreover, this merely supplemented the evidence of sexual harassment. One woman testified that Hostetter asked her to go "to his hideaway," asked her to "shack up," touched her offensively on numerous occasions, and made promises and threats when asking her to drop the charges. The other woman testified that Hostetter had even made suggestive remarks when he hired her and later would "brush up against her" behind the bar. There was substantial support for the administrative decision to dismiss Hostetter on the ground of sexual harassment.
 
 
 7
 We also find no procedural irregularities in the dismissal. Hostetter received notice of the charges against him under AFR 40-7 p 10-6(a); and he cannot claim surprise at the hearing examiner's finding that discrimination by sexual harassment had created a hostile working environment. Hostetter received a detailed summary of the administrative hearing. AFR 40-7 p 11-13(h)(1) specifically allows the examiner to preserve the testimony in this manner and does not require that a taped transcript be made. Hostetter was dismissed in accordance with AFR 40-7, Attachment 1, which sets out a "general framework" for selection of penalties. The Air Force found that dismissal, which is expressly authorized for deliberate second offenses involving sex discrimination and recommended for third offenses, was appropriate in this case involving a "long pattern" of sexual harassment. This interpretation and application of the regulation by the Air Force itself is entitled to great deference and will not be disturbed here. See Udall v. Tallman, 380 U.S. 1, 16-17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); Allen v. Bergland, 661 F.2d 1001, 1004 (4th Cir.1981).
 
 
 8
 One final objection merits mention. Hostetter points out that Air Force regulations require employees bringing sex discrimination allegations against the Air Force be referred to an EEO counselor before they can pursue "appeal or grievance" procedures. AFR 40-7 p 11-8. This does not mean, as Hostetter contends, however, that the Air Force may not discipline an employee practicing sexual harassment and discrimination unless the victims of such behavior pursue their EEO remedies. A victim may seek redress or not, as he or she sees fit, but the right of the Air Force to discipline employees who harass or discriminate is not affected in either event.
 
 
 9
 The judgment of the district court is accordingly
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 Hostetter claims that the Tucker Act waives sovereign immunity for his damages claim because his action is founded "upon the Constitution, or any Act of Congress, or any regulation of an executive department." 28 U.S.C. Sec. 1346(a)(2)
 We note that the Supreme Court recently has found that the Tucker Act did not waive sovereign immunity for a nonappropriated fund instrumentality employee's damages claim because the employee had no "express or implied contract with the United States," an alternative basis for Tucker Act jurisdiction. Army & Air Force Exch. Serv. v. Sheehan, 456 U.S. 728, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982). In Sheehan, however, the employee did not assert Tucker Act jurisdiction on the basis of the Constitution, or a specific statute or regulation. Id. at 735, 102 S.Ct. at 2122.
 It is worth noting, however, that the Court has expressly rejected the argument that violation of any statute or regulation relating to federal employment automatically creates a cause of action against the United States for money damages. United States v. Testan, 424 U.S. 392, 401, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976).
 
 
 [2]
 Nonappropriated fund instrumentalities are activities not funded by Congressional appropriation. NAFI employees are paid primarily from income generated by the activity itself. Perez v. Army & Air Force Exch. Serv., 680 F.2d 779, 780-81 (D.C.Cir.1982)